PER CURIAM.
Plaintiff May Paulette Edwards appeals the trial court’s granting of defendant’s motion for summary judgment. We affirm.
Louisiana jurisprudence is clear that an appellate court may not overturn a decision by a trial court “in the absence of manifest error.” Canter v. Koehring, 283 So.2d 716, 724 (La.1973). In determining whether manifest error exists, appellate courts have a greater obligation than simply determining that some supportive evidence exists to support the trial court’s holding — they must make a “further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).” Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
After reviewing the record in the instant case in light of the principles enun- *10 dated above, we adopt the district court commissioner’s well-written reasons for judgment, as follows, as our own:
On May 14, 1983 petitioner May Edwards filed the instant suit in proper person against Mayer J. Heiman.
In her petition plaintiff alleged that on May 13, 1982 she was arrested by a patrolman of the New Orleans Police Department and was charged with threats on Dr. Mayer J. Heiman. She further alleged that on June 23, 1982 she was transported to Southeast Louisiana State Hospital in Mandeville, La. based upon a Physician’s Emergency Certificate signed by one Dr. Juarez.
[In his amended petition,] [p]laintiff sought damages totaling $850,000.00, based upon the facts that:
(a) The Physician’s Emergency Certificate was issued at the request of or in conspiracy with the defendant, or was forged by him;
(b) Prior to and since her arrest the defendant has harassed and intimidated her by means of telephone calls, attempts to influence others to harass, intimidate or cause aggravation or harm to her;
(c) Defendant has harassed her through mental pressure causing her physical, mental and emotional anguish and distress.
By amended petition filed on June 29, 1983 petitioner corrected her former allegation that she had been transported to Mandeville and now alleged that on June 24, 1982 she was transported to East Louisiana State Hospital in Jackson, Louisiana.
PACTS ESTABLISHED BY AFFIDAVITS IN SUPPORT OF MOTION
Defendant met plaintiff in 1970. Plaintiff began a pattern of harassing phone calls and letters threatening the defendant’s life.
Plaintiff was arrested on May 10, 1982 on charges of disturbing the peace by using obscene language and threats on the life of the defendant, witnessed by the police officer making the arrest.
On May 25, 1982 plaintiff was examined by Dr. William Super who found her gravely disabled and dangerous to others.
On June 23, 1982 Dr. Ciro Juarez-Nunez, employed by the Department of Health and Human Resources examined plaintiff at Charity Hospital, found her to be homicidal, violent and a danger to others, and signed a Physician’s Emergency Certificate authorizing her transfer to East Louisiana Hospital.
At the time of plaintiff’s entrance into East Louisiana State Hospital, there was a Physician’s Emergency Certificate, a coroner’s certificate and a voluntary commitment.
EVIDENCE BY PLAINTIFF
(1) An affidavit by a nurse in Athens, Greece that during a visit by plaintiff in September of 1983 to her mother who was in the hospital, telephone calls were made from a certain gentleman with a foreign accent, from the United States to the hospital, trying to reach Mrs. Edwards, plaintiff herein.
(2) Affidavit from an attorney in Thessaloniki, Greece that plaintiff's mother received telephone calls from the United States informing her that her daughter, plaintiff herein, was lost.
(3) Letter from one Michael M. Haynes, attorney, who once represented plaintiff, to plaintiff’s mother in Greece, advising her of the whereabouts of her daughter as per phone call he received from Dr. Heiman and expressing the opinion “it appears your daughter is still obsessed with the idea that Dr. Heiman is persecuting her.”
(4) Memo dated March 2, 1983 from “Violet” to Mike Haynes concerning a call by Dr. Heiman to let Mike know that Mrs. Edwards, his former client, was back in New Orleans.
(5) Letter by Dr. Heiman to President of Orleans Parish Medical Society, the result of a call to him about letters written to the Society by Mrs. Edwards.
*11 (6) Letter from Medical Record Department at Charity Hospital to the present counsel for plaintiff, advising of no medical records located in plaintiffs name relative to an encounter on June 23, 1982.
(7) Personnel record evidencing termination of employment at Charity Hospital by Dr. Ciro Juarez-Nunez on January 31, 1982.
(8) Judgment, August 11, 1982 discharging plaintiff from East Louisiana State Hospital following a hearing on August 6, 1982, at which hearing plaintiff was represented by Michael Haynes.
(9) Affidavit by J. Kean, police officer who arrested plaintiff on May 10, 1982, the arrest based on his personal observation of her making threats to kill Mayer Heiman or to have him killed and of using obscene language directed to Dr. Heiman and others.
CONCLUSION
From the entire record, including all evidence and affidavits presented, it must be concluded that no genuine issue as to material fact exists and that mover is entitled to judgment as a matter of law.
Mover has conclusively shown that plaintiffs allegations, the basis of her law suit, are completely unsubstantiated and that he did not request nor conspire with others to have plaintiff either arrested or committed, nor did he harass, intimidate or influence others to harass or intimidate the plaintiff. Nor did mover forge anyone’s name.
Plaintiff has produced no evidence that would contradict the supporting documents attached to the motion for summary judgment.
Plaintiffs Exhibits 1, 2, 3, 4, 5, 8 and 9 do not set forth specific facts showing a genuine issue for trial. Her Exhibit nos. 6 and 7, although appearing to do so do not contradict anything. Exhibit 6 merely confirms that Charity Hospital did not undertake the examination of plaintiff on June 23, 1982; this was done by the Department of Health and Human Resources, through its doctor Ciro Juarez-Nunez, who once was employed by Charity but whose position at that institution terminated on January 31, 1982, as reflected by Exhibit 7 filed by plaintiff herein.
The year before her arrest and her commitment plaintiff wrote letters to total strangers, prominent individuals, which letters are indeed supportive to establish that at least in 1981 plaintiff was in dire need of the help she finally received in June of 1982 when she was hospitalized.
For the reasons stated by the trial court, we find that the motion for summary judgment was properly granted.
AFFIRMED.